UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| GREGORY POTTER, TDOC #104108, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:10-CV-12 |
| ) | *Greer/Inman* |
| DANE LEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

Gregory Potter, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") in the Northeast Correctional Complex ("NECX"), has filed this *pro se* civil rights suit for injunctive and monetary relief under 42 U.S.C. § 1983, [Doc. 3]. Defendant is a physician who provides medical care to NECX inmates.

Based on the financial data supplied in plaintiff's affidavit, his application to proceed without prepayment of fees, [Doc. 1], is **GRANTED**. Nonetheless, because plaintiff is a prisoner, he is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997) *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

The custodian of plaintiff's inmate trust account at the institution where he now resides is directed to submit to the Clerk of Court, as an initial partial payment, twenty percent (20%) of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six (6) months immediately preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1).

After full payment of the initial partial filing fee, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of

$350.00 has been paid to the Clerk's Office. Payments should be sent to: <u>Clerk, USDC; 220 W. Depot St., Ste. 200; Greeneville, TN 37743.</u>

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where plaintiff is now confined and to Derrick D. Schofield, TDOC Commissioner. This order shall by placed in plaintiff's prison file and follow him if he is transferred to another correctional institution.

## I. Screening the Complaint

The complaint now must be screened to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A; *McGore*, 114 F.3d at 607. Moreover, *pro se* pleadings are to be generously construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court examines the complaint in light of those requirements.

## II. Plaintiff's Allegations

In his complaint, plaintiff maintains that he has a liver disease, i.e., Hepatitis C, with a Geno type 1-A—a condition which was discovered in July of 2008, when defendant doctor sent plaintiff from the NECX to the Special Needs Facility in Nashville, Tennessee to have a liver biopsy. When plaintiff returned to NECX, defendant Lee discussed the treatment regime for the Hepatitis C, which needed to continue for one year, without interruption, and which consisted of one injection per week of pegasys (Interferon); two pills per week of copegus (Ribavirin) for one year; frequent blood tests; and monthly checkups to be performed by defendant himself or a Nurse Practitioner. Dr. Lee stated that the treatment would make plaintiff very sick and that it was unlikely, due to plaintiff's age, that he could handle the side effects of the medications.

2

The treatment began, plaintiff's viral load dropped from 10,000,000 to 5,000 within several weeks after the treatment commenced, and all went well until February of 2009, when, after only twenty-six weeks on the medication regime, he was told by the nurse that defendant doctor had discontinued the treatment. Unable to obtain information from the nurses as to why his treatment had been stopped, plaintiff wrote to a prison official and, ultimately, received a response informing him that the treatment would be restarted in April of 2009. On April 13, 2009, the treatment was recommenced; the next day, his blood was drawn for a viral load test; and a few days later, plaintiff began experiencing dizziness, insomnia, severe depression, and mood swings—symptoms which were not present during the initial period of treatment.

Seven weeks after restarting the treatment, defendant doctor told plaintiff that the medications would be stopped, explaining that the blood test results showed an increase in plaintiff's viral load to 119,000, leading this medical care provider to conclude that the treatment was no longer working. Plaintiff responded to defendant's announcement by expressing confusion as to why the treatment worked the first time until it was discontinued, but did not work after it was restarted. Defendant doctor replied that it works for some, but not others, and recalled that he initially had expressed reservations about plaintiff's being a good candidate for the treatment.

Plaintiff is asserting that the above-described conduct on the part of Dr. Lee constitutes a violation of his Eighth Amendment right prohibiting deliberate indifference to a prisoner's serious medical needs.

### III. Discussion

1. *Applicable Law*

Prison authorities who are deliberately indifferent to the serious medical needs of prisoners violate the Eighth Amendment rights of those prisoners. *Estelle*, 429 U.S. at 104. The Eighth

3

Amendment, however, does not entitle an inmate "to demand specific care. [An inmate] is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Fasc. v. Chapel*, 468 F.2d 1072, 1076 (6th Cir. 1972) (finding that the Eighth Amendment does not require that every request for medical care made by prisoner be honored). As long as the treatment actually afforded an inmate squares with constitutional standards, he has no right to demand second opinions, a certain physician, or a particular treatment. *Estelle*, 429 U.S. at 106-07; *McCracken v. Jones*, 562 F.2d 22 (10th Cir. 1977).

Be that as it may, there are two elements in an Eighth Amendment claim: an objective one, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective one, which requires a showing of a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to an inmate under his care. *Id*. However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106.

2. <u>Analysis</u>

The Court will assume that plaintiff has alleged a serious medical need by stating that he has Hepatitis C. Even so, the Court simply does not see a constitutional violation here because there is no evidence of deliberate indifference. *Farmer*, 511 U.S. at 837 (finding deliberate indifference where prison official knows facts from which he could draw an inference of the existence of a

substantial risk of harm *and where he actually draws the inference*) (emphasis supplied). Given the results of plaintiff's blood tests, there is nothing in the pleadings or other submissions to show that Dr. Lee actually drew an inference that discontinuing treatment for plaintiff's Hepatitis-C would subject him to a serious risk of harm.

Plaintiff's contentions do not indicate that defendant disregarded his need for medical care, indeed, Dr. Lee sent him to Nashville for a liver biopsy, instituted a treatment protocol for the Hepatitis C, gave him medications, and ensured that he or his staff would monitor plaintiff's condition as the treatment progressed. *Farmer*, 511 U.S. at 835-36 (concluding that, by taking reasonable measures to abate the harm, a defendant avoids liability, even if the harm is not averted). The fact that plaintiff believes that the interruption of the course of treatment made it stop working—a belief which, seemingly, has been verified by information contained in a booklet he received from the National Digestive Diseases Information Clearinghouse, entitled "Chronic Hepatitis C: Current Disease Management" (Doc. 3, Attach. 2)—, is not a constitutional matter but is, if anything, a medical negligence claim under state tort law.

### IV. Conclusion

The Court **FINDS**, for the above reasons, that plaintiff has failed to state a claim entitling him to relief under § 1983.

This case will be **DISMISSED** by separate order.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
